IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

CIVIL ACTION NO.: 6:22CV00025

CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

MAY 10 2022

JULIA C. DUDLEY, CLERK
BY: C. Amos
DEPUTY CLERK

**JERDONNIS MURRAY,**

*Plaintiff,*

vs.

**LIBERTY UNIVERSITY, INC.
D/B/A LIBERTY UNIVERSITY**

*Defendant.*

**COMPLAINT AND PRAYER
FOR JURY TRIAL**

**NOW COMES** the Plaintiff, Jerdonnis Murray ("Murray" or "Plaintiff"),

complaining of the Defendant, bring this complaint against Defendant Liberty University,

Inc., d/b/a Liberty University ("Liberty University Online," "Liberty," the "University,"

or "Defendant"), and alleges the following to be true:

## INTRODUCTION

1.     This matter regards several acts committed by officials acting in their

official capacity for the Defendant, which deprived Plaintiff, a former doctoral candidate

in the Defendant's online school of education, of fees, which include tuition, costs of

services, and/or activities (including activity fees, technology fees, and other fees) for a

course Plaintiff enrolled, Principles of Human Performance Technology ("EDU 732" or

"human performance technology"), for the spring 2021 semester at Liberty University.

2.      The tuition, costs of services, and/or activities associated with the Principles of Human Performance Technology course, which is approximately $5,071, continue to be reported to the United States Department of Education's loan service provider, Aidvantage, as a debt owed by Plaintiff due to Defendant's inaction to address the amount of the loan debt in dispute, which is a violation of provisions of 15 U.S.C. § 1681 of Fair Credit Reporting Act ("FCRA").

3.      Additionally, negligent acts committed by the employees of Defendant acting in their official capacity resulted in a reversal of Plaintiff's admission into the University of Louisiana at Monroe's doctoral in curriculum and instruction program and loss of fees for application, transcript, and test scores.

4.      The acts in question occurred shortly after Plaintiff requested a transfer out of the section of a course, Principles of Human Performance Technology, and escalated an internal complaint focused on what he perceived to be acts of fraudulent misrepresentation of a course, which was paid for with a federal loan provided by the United States Department of Education's student aid program.

5.      Each paragraph in this complaint incorporates all others.

## PARTIES, JURISDICTION, AND VENUE

6.      Liberty University, Inc. is a Virginia nonstock corporation that receives federal funding for providing both online and residential higher educational services. Defendant's principal place of business is at 1971 University Boulevard, Lynchburg, Virginia 24515. The entity operates as, a.) Liberty University, an accredited evangelical



-2-

liberal arts institution based in Lynchburg, Virginia, with seventeen colleges and schools; b.) Liberty University Online, https://www.libertyuniversityonline.com, which provides virtual/distance learning programs, both nationally and internationally; and c.) Liberty University Online Academy, https://www.liberty.edu/online-academy/, is an accredited K-12 private Christian online academy that provides both primary and secondary virtual/distance learning to children and adolescents.

7.    Plaintiff is a resident of Forsyth County, North Carolina who attended Liberty University Online.

8.    This Court has personal jurisdiction over Defendant in this matter, as Defendant does business and/or maintains minimum contacts in the Western District of Virginia.

9.    This Court has subject-matter jurisdiction in this matter under 28 U.S.C. § 1331, as the action arises under federal law.

10.    The venue is proper in this Court according to any or all of the following:

    a.    This Court has jurisdiction over the subject matter pursuant to the provisions of 15 U.S.C. § 1681.

    b.    This Court has personal jurisdiction over Defendant because it is a citizen of Virginia and as well as all or a substantial part of the wrongful acts and omissions committed by Defendant giving rise to the claim occurred in Virginia;

    c.    28 U.S.C. § 1391(b)(1), as the Defendant is subject to personal jurisdiction in the District of Virginia; and/or

    d.    28 U.S.C. § 1367, which gives the district court supplemental jurisdiction over state law claims.

-3-

11.     All actions material to this Complaint have occurred around or within 1 year of the filing of this Complaint.

12.     At all times material to this Complaint, Defendant's employees, acting in their official capacity, formulated, directed, controlled, had the authority to control, and directly participated in the acts and practices alleged in this Complaint.

13.     Prior to bringing this action, on or around May 31, 2021, Plaintiff timely submitted a borrower's defense application and a complaint alleging fraudulent misrepresentation with the United States Department of Education.

14.     As of February 4, 2022, Plaintiff's allegations are awaiting assignment to an investigator from the U.S. Department of Education for investigation.

15.     On or around April 6, 2022, Plaintiff contacted Aidvantage concerning the amount of the federal student loan in dispute to assess the status of the debt that is in dispute.

16.     The representative for Aidvantage informed Plaintiff that the amount of the student loan that Plaintiff is disputing is still on his account and there has been no official response from Defendant concerning the validity of Plaintiff's claim.

17.     Additionally, the Aidvantage representative informed Plaintiff that he is still responsible for the amount he is disputing, the interest that will be accumulated by the amount he is disputing, as well as any penalties if he does not pay the amount and all fees associated with the said amount.

18.     Plaintiff informed the Aidvantage representative that he filed a complaint and borrower's defense application with the U.S. Department of Education concerning the amount he is disputing.

19.     The Aidvantage representative informed Plaintiff that due to the backlog of borrower defense applications, it could take years for him to obtain a decision concerning the amount of the student loan he is disputing to be approved. Consequently, in the meanwhile, the amount Plaintiff is disputing will continue to be reported to credit reporting agencies as a legitimate debt owed by Plaintiff.

20.     Due to statutory limits on Plaintiff's claims, it was advised that Plaintiff pursue remedies and relief for all his claims through civil action in a court of law.

## FACTUAL ALLEGATIONS

21.     Plaintiff was a doctoral candidate in Liberty University Online's school of education beginning in August 2019 through May 2021, in which he maintained a 4.0-grade point average as a full-time student.

22.     On January 18, 2021, Plaintiff started the spring semester of study by enrolling in the course, EDUC 732 Principles of Human Performance Technology.

23.     The course was advertised on Defendant's website and course paradigm as an eight-week course focused on expanding learners' knowledge and understanding in the discipline of human performance technology.

24.     The human performance technology course specifically identified several instructional mechanisms to inculcate the course's subject matter in its learners. Amongst

these approaches were, a.) Discussion boards, which are based on Constructivist empirical learning theory, and b.) A paper, which encompassed the discipline of human performance technology.

25.     On or around February 7, 2021, The professor of the Principles of Human Performance Technology course, Dr. Daniel Baer ("Baer"), engage in an instance of unconscionable behavior by retroactively applying a standard of grading to the course material that was not previously referenced during previous assignments.

26.     On or around February 2, 2021, a conversation between Plaintiff and Baer, encompassing Plaintiff's concerns about Baer's implementation of the course curriculum, revealed that Baer could not identify a single mechanism or device that facilitated human performance technology.

27.     On or around February 2, 2021, Plaintiff immediately filed a request to transfer to a different section of the human performance technology course to study under a competent professor in human performance technology subject matter.

28.     On or around February 16, 2021, Plaintiff's initial request was denied without any reason being given for the denial for transfer to a different section of the human performance technology course.

29.     On or around February 16, 2021, Plaintiff appealed the decision to the dean of Liberty University Online, Dr. Deanna Keith ("Keith") for reconsideration.

30.     On or around March 3, 2021, Keith granted Plaintiff's appeal for a transfer to a different section of human performance technology. However, after appealing the



initial decision that took approximately 4 weeks to be approved, which is half of the course's duration, the course was over.

31.     On or around March 24, 2021, Dr. Michael Kurt ("Kurt"), an administrator in Defendant's school of education, relieved Baer, then attempted to truncate the 8-week course into about or around a 4-week course in which he sought to use discussion boards, which are based on Constructivist theory, in a one-to-one approach.

32.     Constructivist approaches are dependent on social interaction. As it relates to discussion boards, it means it would require an instructor and peer interaction to facilitate an exchange of ideas for the instructional approach to function properly.

33.     The course had concluded, consequently meaning, that there were no peers for interaction and an exchange of ideas.

34.     Kurt arbitrarily decided to deviate from the given human performance technology paradigm topic for the course paper instructing Plaintiff to write about his dissertation topic, which had, virtually, nothing to do with the course that was funded by the federal student loan, which was human performance technology.

35.     On or around April 14, 2021, Plaintiff filed a complaint with Defendant's student affairs department to report Kurt's fraudulent misrepresentation of the human performance technology course.

36.     On or about April 19, 2021, Luke Gentala ("Gentala") contacted Plaintiff concerning the complaint about Kurt.

37.     Per Gentala, he was assigned in his capacity as Defendant's ombudsman to ameliorate the issues of the fraudulent misrepresentation of the Principles of Human Performance Technology by Defendant's chancellor, Dr. Jerry Prevo ("Prevo").

38.     Gentala presented the notion that it is within the scope of Defendant's accreditation to utilize an unconventional "ad hoc" process of "one-to-one" instruction for addressing the issues encompassing the deficiencies of the Principles of Human Performance Technology.

39.     However, Gentala did not assess the deviations from the human performance technology subject matter by Kurt or his inconsistent methods that were not within the scope of the pedagogical design of the human performance technology course.

40.     On or around April 21, 2021, After Plaintiff gathered more information concerning fraudulent misrepresentation and his rights to an education commensurate to his peers, in addition to evidence in the form of correspondences from Kurt, Plaintiff informed Kurt and Gentala that he would not be participating in this misrepresentation of the human performance technology course.

41.     On or around May 10, 2021, Plaintiff informed Gentala, Keith, Prevo, and Kurt that he acquire a federal student loan to pay for an 8-week course, Principles of Human Performance Technology, and nothing that deviated from the criteria set forth in the course syllabus or other advertisements by Defendant.

42.     On or around May 11, 2021, Plaintiff carbon-copied Prevo and Kieth on the email, which included the chain of events that have transpired over the final few weeks of the spring 2021 semester.

43.     On or around May 14, 2021, Defendant issued a "Failure for not attending," which was represented as "F" on Plaintiff's transcript, for not capitulating to the fraudulent misrepresentation of the human performance technology course.

44.     Neither Prevo nor Keith attempted to address or resolve the issues of the fraudulent misrepresentation committed by Kurt.

45.     On or about June 11, 2021, Plaintiff contacted the consumer protection division of the Office of Attorney General of Virginia to file a complaint to 1.) Recover the loss of tuition and cost of attendance from the Principles of Human Performance Technology course and 2.) Have the "F" removed from his transcript.

46.     The office of the Attorney General of Virginia's consumer protection division offered Defendant the opportunity to engage in non-binding mediation to resolve the matters.

47.     On or around June 24, 2021, Defendant's attorney submitted a letter to the consumer protection division of the Attorney General of Virginia's office declining the mediation cited the Family Educational Rights and Privacy Act ("FERPA") as the rationale.

48.     Defendant has used FERPA as a common tactic to avoid accountability for their misconduct in substantially similar situations that encompass Plaintiff's situation in

around or over 40 complaints to Better Business Bureau ("BBB") that can be referenced on several BBB's websites throughout the state of Virginia.

49.    On or around February 8, 2022, Plaintiff was accepted for admission into the University of Louisiana of Monroe's Doctorate of Curriculum of Instruction program,

50.    On or around March 4, 2022, Plaintiff was informed that his admission into the University of Louisiana of Monroe's Doctorate of Curriculum of Instruction program had been rescinded because of the F on the transcript submitted by Defendant.

51.    The adverse action of the rescinding of Plaintiff's admission into the University of Louisiana of Monroe's Doctorate of Curriculum of Instruction program is a direct result of negligent action taken by Defendant resulting in additional loss of funds and resources.

### FIRST CAUSE OF ACTION
### Count I – Violations of Provisions of the Fair Credit Reporting Act

1.    Plaintiff repeats and alleges the allegations in Paragraphs 1-51, above, as if fully alleged herein.

2.    Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), requires Defendant to follow reasonable procedures to assure maximum possible accuracy of consumer reporting information of students' loan accounts. Defendant has failed to follow any reasonable procedures to assure the maximum possible accuracy of the information in Plaintiff's account that is reported to The U.S. Department of Education and/or their loan servicer, Aidvantage, as required by section 607(b).

-10-

3.      Additionally, a private cause of action arises under 15 US.C. § 168ls-2(b) when, having received notice of a consumer's potentially meritorious dispute, a furnisher subsequently fails to report that the claim is disputed.

4.      Defendant was informed of misrepresentations involving the human performance technology course as well as the disputed loan amount by both Plaintiff and the consumer protection division of the Attorney General of Virginia.

5.      the Third Circuit ruled in a precedential opinion that the Higher Education Act of 1965 (HEA), 20 U.S.C §§ 1001 et seq., does not exempt an institution of higher education that furnishes student loan information to a credit reporting agency from the general reporting requirements of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 et seq.

6.      Per the Federal Civil Penalty Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvements Act of 1996, Pub. L. 104-134, § 31001 (s)(1), 110 Stat. 1321-373, the Court is authorized to award a penalty of not more than $2,500 per violation for violations occurring before February 10, 2009, and $3,500 per violation for violations occurring on or after that date.

7.      Plaintiff seeks monetary damages for violation of the FCRA.

## SECOND CAUSE OF ACTION
### Count II - Fraudulent Misrepresentation

8.      Plaintiff repeats and alleges the allegations in Paragraphs 1-51, above, as if fully alleged herein.

-11-

9.   The United States Department of Education has outlined the criteria for federal student loan borrowers, both in its borrower's defense application and 34 C.F.R. § 668.71 of the Code of Federal Regulation, that constitute grounds for universities and colleges to be investigated for activities that rise to substantial misrepresentation of educational services.

10.   The criteria indicated by The United States Department of Education for misrepresenting educational services encompasses a college or university failing to tell students important information about the availability of educational opportunities or support services provided by the school.

11.   Under the United States Department of Education's criteria, Defendant willfully and wantonly, a.) Misrepresented the qualifications of its faculty, b.) Misrepresented how the human performance technology course would be taught, and, b.) Misrepresented how often required courses would be available or when those courses would be scheduled.

12.   The fact that Defendant sought to fraudulently misrepresent a course, human performance technology, which was paid for with a federal loan, by fabricating, truncating, and diametrically changing the course assignments to subject matter other than human performance technology is unconscionable.

13.   Kurt's fraudulent misrepresentation of the human performance technology course was explicitly not nearly tantamount in description, structure, substance, and

academic vigor as any other course Plaintiff had ever paid for on any level of post-secondary education.

14.     Defendant improperly retained monies paid by Plaintiff with a federal student loan, while neglecting to provide educational services to plaintiff that reflect the value of educational services provided by similarly situated institutions of higher education.

15.     All of the aforementioned dynamics were pre-textual in an attempt to keep the money from the federal loan, which was used to pay for the human performance technology course to acquire knowledge about the discipline of human performance technology.

### THIRD CAUSE OF ACTION
### Count III - Violation of the Virginia Consumer Protection Act, Va. Code § 59.1-200, et seq.

1.     Plaintiff repeats and alleges the allegations in Paragraphs 1-51, above, as if fully alleged herein.

2.     The educational services provided by Defendant in which Plaintiff acquired the federal student loan to pay Defendant are intended primarily for personal purposes for the benefit of Plaintiff. As a supplier of services in the Commonwealth of Virginia, Defendant was paid fees by Plaintiff for educational services commensurate to similarly situated institutions of higher education.

3. However, Defendant materially altered and diametrically truncated the course, Principles of Human Performance Technology to a course that is substantially different from as advertised.

4. Moreover, Defendant's offering of this substandard truncated version of the Principles of Human Performance and Technology course described above was a pretextual ruse to keep the monies paid to Defendant, while not having to offer Plaintiff another course at the Defendant's expense.

5. In describing the truncated and diametrically alter the course, Principles of Human Performance Technology, as an "acceptable practice" while simultaneously materially reducing or eliminating the content that explicitly addresses human performance technology subject matter, Defendant engaged in practices prohibited by the Virginia Consumer Protection Act, Va. Code § 59.1-200, including but not limited to:

a.) Advertising services with the intent not to sell them as advertised;

b.) Misrepresenting the characteristics and benefits of services;

c.) Using deception, false pretense, and misrepresentation in connection with a consumer transaction; and advertising services with the intent not to sell them as advertised.

d.) Making misleading statements of fact concerning the reasons for or existence of a price reduction.

-14-

6.     Defendant's conduct as alleged herein was wantonly, recklessly, and willfully committed with the intent to mislead and profit. As a result of the above-prohibited practices by Defendant, Plaintiff acquired a federal student loan, consequently, accruing additional debit resulting in having suffered and continue to suffer financial losses.

## FOURTH CAUSE OF ACTION
### Count IV- Negligent Misrepresentation

1.     Plaintiff repeats and alleges the allegations in Paragraphs 1-51, above, as if fully alleged herein.

2.     Defendant made negligent and material misrepresentations consisting of untrue representations and failures of disclosure which Defendant intended Plaintiff to rely on and upon regarding his academic performance by submitting an official transcript to the University of Louisiana of Monroe with a grade of "F" for the fraudulently misrepresented Principles of Human Performance Technology course.

3.     Defendants' acts and omissions were abhorrent and amounted to negligent misrepresentation of Plaintiff concerning the characterization of Plaintiff's academic performance when presenting an official document on behalf of Plaintiff for admission into another university.

4.     Consequently, 1.) Liberty University's actions and omissions caused Plaintiff to suffer harm, and, 2.) The actions and omissions of Defendant were willful,

-15-

wanton, reckless, malicious, oppressive, grossly negligent, and in bad faith, thereby entitling Plaintiff to punitive damages.

### FIFTH CAUSE OF ACTION
### Count V - Constructive Fraud

1.    Plaintiff repeats and alleges the allegations in Paragraphs 1-51, above, as if fully alleged herein.

2.    Plaintiffs bring this claim, and in the alternative to the negligent misrepresentation claim (Fourth Cause for Relief), set forth above

3.    Virginia's common-law doctrines of constructive fraud indicate to establish constructive fraud in the state of Virginia a Plaintiff must prove the following by clear, cogent, and convincing evidence, 1.) There was a materially false representation, 2.) The hearer believed it to be true, 3.) It was meant to be acted on, 4.) It was acted on, and 5.) The damage was sustained. Therefore, even if the false statements, representations, and disclosures of fact made by Defendant's employees were made innocently, Plaintiff is entitled to the recovery of actual damages under the common law doctrine of constructive fraud.

4.    Plaintiff incurred actual damages in the form of 1.) Tuition, 2.) Cost of attendance, 3.) Rescinding of admission into the University of Louisiana at Monroe and associated fees (i.e. postage, application fees, test scores) in addition to recovery of punitive damages because of the fraudulent acts and omissions committed by Defendant during the course of the transaction, which forms the basis of this suit.

-16-

## SIXTH CAUSE OF ACTION
## Count VI - Breach of Contract

1.      Plaintiff repeats and alleges the allegations in Paragraphs 1-51, above, as if fully alleged herein

2.      Defendant's administration, faculty, and staff hold a unique position of influence and trust to their students, consequently, meaning Defendant's administration, faculty, and staff have a fiduciary duty that requires them to exercise their rights and powers in good faith and for the benefit of the student.

3.      The elements of a breach of contract action are (I) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.

4.      Plaintiff entered into a contract with Defendant, which provided that Plaintiff acquired a federal student loan to pay fees to Defendant. Accordingly, in exchange for fees, Defendant would provide educational services as advertised on Defendant's website and outlined in Defendant's course syllabi. Plaintiff fulfilled his financial obligation by paying all of the fees due to Defendant for the spring 2021 semester.

5.      Here within the evidence showed that Defendant agreed to provide educational services in a doctoral education program as advertised on Defendant's website and in the Principles of Human Performance Technology syllabus per standards of similarly situated doctoral programs of instructional design and technology as mundanely implement for 8 weeks.

-17-

6.     However, Defendant failed to provide educational services within the scope of acceptable practices for post-secondary institutions accredited to provide doctoral courses that are commensurate and transferrable to their peers.

7.     Defendant sought to undermine the aforementioned acceptable standard in an attempt to provide a diametrically different implementation of the 8-week course in a manner that was undermined the tenets of the course format (i.e. discussion boards require peer interaction, conversely the class had concluded, therefore, Dr. Kirk's attempt to continue to use discussion boards was absurd.).

8.     Consequently, Defendant's actions breached their obligation to Plaintiff resulting in loss of course credit, tuition, and cost of attendance.

9.     Defendant breach its obligations, in light of the irregularities on the face of the student loan information that would suggest that Defendant was involved and encompassed a pivotal role in a substantial and unaddressed dispute regarding the reporting of Plaintiff's student loan.

10.     Private cause of action arises under 15 US.C. § 168ls-2(b) when, having received notice of a consumer's potentially meritorious dispute, a furnisher subsequently fails to report that the claim is disputed.

11.     In the alternative, even if not a breach of the express terms of Defendant's contract with Plaintiff, Defendant's conduct breached the covenant of good faith and fair dealing implied by the laws of Virginia governing contracts.

12.     Plaintiff has been damaged—in an amount to be proven at trial—in that Plaintiff has been deprived of the value of the services for which he acquired a federal student loan, which was paid with the intent to cover appropriate educational services.

## SEVENTH CLAIM FOR RELIEF
### Count VII - Unjust Enrichment

1.     Plaintiff repeats and alleges the allegations in Paragraphs 1-51, above, as if fully alleged herein.

2.     Plaintiffs bring this claim, and in the alternative to the breach of contract claim (Sixth Cause for Relief), set forth above.

3.     Plaintiffs paid fees to Defendant, which were intended for educational services commensurate to standards of doctoral programs at similarly situated institutions of higher education for the course, Principles of Human Performance Technology. In exchange, Plaintiff was entitled to receive educational services to improve his understanding of the discipline of Human Performance Technology.

4.     Contrary to any other course Plaintiff has enrolled in throughout his undergraduate and graduate experience, Plaintiff was offered a substantially subpar course that was diametrically different from courses provided during his previous educational experiences. Despite the disparities in providing the Principles of Human Performance Technology course, Defendant retained fees paid by Plaintiff without any efforts to redress their conduct, or engage in mediation with the consumer protection division of the Attorney General of Virginia's office, as such, has been enriched.

5.     Defendant has been unjustly enriched by retaining the fees paid by Plaintiff for the Principles of Human Performance Technology in addition to other costs of attendance while not providing appropriate services for which those fees were paid. Equity requires Defendant to return the fees paid by Plaintiff.

### EIGHTH CAUSE OF ACTION
### Count VIII - Breach of Fiduciary Duty

1.     Plaintiff repeats and alleges the allegations in Paragraphs 1-51, above, as if fully alleged herein.

2.     To state a claim under the Code of Virginia § 8.3A-307 Notice of Breach of Fiduciary Duty, a plaintiff must allege: 1.) the existence of a fiduciary duty; 2.) a breach of that duty, and 3.) resulting damages.

3.     Defendant owed Plaintiff the fiduciary duty of providing educational services tantamount to acceptable standards of similarly situated higher education settings.

4.     Consequently, Defendant breached that duty by seeking to undermine acceptable standards of implementing a course at the doctoral level.

5.     Finally, Defendant sought to benefit themselves in the transaction by retaining the tuition funds, while not having to offer Plaintiff another course at Defendant's own cost, nor having to incur any financial loss for reimbursing Plaintiff for the cost of attendance.

## NINTH CAUSE OF ACTION
### IX - Conversion

1.    Plaintiff repeats and alleges the allegations in Paragraphs 1-51, above, as if fully alleged herein.

2.    Plaintiff has a right to be provided with educational services commensurate to the standards of similarly situated doctoral programs at institutions of higher education that were supposed to be provided in exchange for payments of fees to Defendant.

3.    Defendant consciously refuse to provide Plaintiff with appropriate educational services when Defendant sought to alter the course, Principles of Human Performance Technology in a format that was other than advertised in a substandard manner for which the fees were intended to pay while retaining the fees paid by Plaintiffs.

4.    Defendant's actions deprived Plaintiff of his fees and the right to appropriate educational services in exchange for fees.

5.    Plaintiff demanded the return of his tuition and cost of attendance for the course, Principles of Human Performance and Technology.

6.    Subsequently, Plaintiff attempted to mediate the issue through the consumer protection division of the Attorney General of Virginia's office. However, Defendant remained obdurate to reason.

7.    Defendant's retention of the fees paid by Plaintiff without providing appropriate services for which Defendant received payment deprived Plaintiff of the benefits and value for which occurred financial debit from another federal student loan.

8.      The interferences of the deprivation of appropriate educational services for which Plaintiff acquired a federal student loan to pay Defendant damaged Plaintiff with the acquisition of more debt without the appropriate college credit for which he paid Defendant fees. Therefore, Plaintiff is entitled to the return of his tuition and cost of attendance.

## PRAYER FOR PUNITIVE DAMAGES

1.      In its above-described conduct, Defendant acted with malice, willfulness, and reckless disregard for Plaintiff.

2.      Because of these factors, Plaintiff is entitled to actual and punitive damages commensurate with the egregiousness of Defendant's behavior and sufficient to deter future misconduct by Defendant.

**WHEREFORE**, the Plaintiff respectfully requests this Court that it:

1.      Find for the Plaintiff and against the Defendant on all causes of action alleged herein;

2.      Enter a permanent injunction to prevent future violations of the FCRA by Defendant.

3.      Enter a permanent injunction to prevent Defendant from affecting similarly situated students who entrust Defendant to conduct business transactions, such as reporting students' academic performance to other Universities and colleges, in a fair and ethical manner in the future.

-22-



4.  Declaring that Defendant has wrongfully kept the monies paid for fees;

5.  Mandate that Defendant corrects Plaintiff's transcript

6.  Award the Plaintiff damages, including punitive damages, in an amount to be proved at trial;

7.  Awarding the greater of statutory or actual damages pursuant to Virginia Code § 59.1-204;

8.  Declaring that Liberty's violations of Virginia Code § 59.1-204 were willful and that Plaintiff is entitled to treble damages.

9.  Pursuant to either or a combination of the common law doctrines of fraud, misrepresentation and deceit; constructive fraud; negligence; and punitive damages;

10. Awarding pre-and post-judgment interest on any amounts awarded;

11. Tax the costs of this action against the Defendant as allowed by law;

12. Impose a constructive trust over all sums through which Defendant have been unjustly enriched; and

13. For such other and further relief as the Court deems just and proper.

*Respectfully submitted this, the ____9th____ day of May 2022.*

-23-

**Jerdonnis Murray,** *Plaintiff*
180-C Vista Circle.
Winston-Salem, NC 27106
Phone: (336) 972-2568
Fax: (336) 723-9110
jerdonnis_murray@hotmail.com

-24-

## CERTIFICATE OF SERVICE

I hereby certify that on *May _____, 2022, I* served the foregoing **COMPLAINT**

on the Defendant in this matter via Certified US Mail, Return Receipt Requested to the

following:

> Liberty University, Inc. D/B/A Liberty University
> c/o Ian M. McRary
> 1971 University Blvd.
> Green Hall, Suite 2730
> Lynchburg, VA 24515
> LegalAffairs@Liberty.edu
> *Senior legal counsel for Liberty University, Inc*


> _____

> **Jerdonnis Murray,** *Plaintiff*
> 180-C Vista Cir.
> Winston-Salem, NC 27106
> Phone: (336) 972-2568
> Fax: (336) 723-9110
> jerdonnis_murray@hotmail.com