CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/6/2022
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

| | |
|---|---|
| JERDONNIS MURRAY<br>*Plaintiff*,<br>v.<br>LIBERTY UNIVERSITY, INC.,<br>*Defendant.* | CASE NO. 6:22-cv-00025<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the motion to dismiss filed by Defendant Liberty University. Dkt. 9. Plaintiff Jerdonnis Murray asserts a variety of claims against Defendant. These claims include: (1) violation of the Fair Credit Reporting Act ("FCRA"), (2) fraudulent misrepresentation, (3) violation of the Virginia Consumer Protection Act ("VCPA"), (4) negligent misrepresentation, (5) constructive fraud, (6) breach of contract, (7) unjust enrichment, (8) breach of fiduciary duty, (9) and conversion. Plaintiff also requests injunctive relief. The Court will grant Defendant's motion to dismiss as to each claim and dismiss this case.

## Background

The following facts are alleged in Plaintiff's complaint and assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (explaining standard of review). Plaintiff Jerdonnis Murray alleges that, between August 2019 and May 2021, he was enrolled as a graduate student in Defendant Liberty University ("Liberty")'s Online School of Education. Dkt. 1 ("Compl.") ¶ 21. On January 18, 2021, Plaintiff enrolled in an online course called EDUC 732 Principles of Human Performance Technology. *Id.* ¶ 22. Plaintiff

alleges that Defendant's website and course paradigm advertised the course as "an eight-week course focused on expanding learners' knowledge and understanding in the discipline of human performance technology." *Id.* ¶ 23. The course "specifically identified several instructional mechanisms." *Id* ¶ 24. "On or around February 2, 2021," Plaintiff spoke with the course instructor, Dr. Daniel Baer, about Plaintiff's concerns regarding Baer's course curriculum implementation. *Id.* ¶ 26. On or around the same date, Plaintiff "filed a request to transfer to a different section of the human performance technology course to study under a competent professor in human performance technology subject matter." *Id.* ¶ 27. Then, Plaintiff alleges that "[o]n or around February 7, 2021," Dr. Baer "retroactively appl[ied] a standard of grading to the course material that was not previously referenced during previous assignments." *Id.* ¶ 25. Plaintiff's initial request to transfer to a different section of the course, taught by a different professor, was denied "[o]n or around February 16, 2021," and Plaintiff did not receive any reason as to why. *Id.* ¶ 28. On or around this same date, Plaintiff appealed the decision to Liberty University Online's dean, Dr. Deanna Keith, for reconsideration. *Id.* ¶ 29. Dr. Keith granted Plaintiff's appeal for a transfer to a different section of the course on or around March 3, 2021. *Id.* ¶ 30.

By the time that Dr. Keith granted Plaintiff's appeal, the eight-week course had ended. *Id.* Dr. Michael Kurt, an administrator, attempted to truncate the eight-week course, teach it in around four weeks, and do so using discussion boards based on Constructivist theory—the theory Liberty University Online advertised the course as using—in a one-to-one approach with Plaintiff. *Id.* ¶¶ 24, 31. Plaintiff alleges that Constructivist approaches depend on social interaction, but as the course had concluded and Plaintiff was in a one-to-one setting, he could not experience the exchange of ideas inherent to a Constructivist approach. *Id.* ¶¶ 32–33. Further,

Plaintiff alleges that Dr. Kurt "arbitrarily decided to deviate from the given human performance technology paradigm topic for the course paper" instead "instructing Plaintiff to write about [Dr. Kurt's] dissertation topic, which had, virtually, nothing to do with the course." *Id.* ¶ 34.

Plaintiff filed a complaint with Defendant's student affairs department "[o]n or around April 14, 2021," "to report Kurt's fraudulent misrepresentation of the human performance technology course." *Id.* ¶ 35. Liberty assigned Plaintiff an ombudsman "to ameliorate the issues of the fraudulent misrepresentation." *Id.* ¶ 37. Plaintiff's assigned ombudsman informed Plaintiff that Defendant maintains the discretion "to utilize an unconventional 'ad hoc' process of 'one-to-one' instruction for addressing the issues encompassing the deficiencies of the Principles of Human Performance Technology." *Id.* ¶ 38. The ombudsman "did not assess the deviations from the human performance technology subject matter by Kurt or his inconsistent methods that were not within the scope of the pedagogical design" of the course. *Id.* ¶ 39.

Plaintiff alleges that "[o]n or around April 21, 2021," he informed Dr. Kurt and his ombudsman that he would not complete the course with Dr. Kurt. *Id.* ¶ 40. "On or around May 10, 2021," Plaintiff made known that he acquired a federal loan to pay for an 8-week course, Principles of Human Performance Technology, but "nothing that deviated from the criteria set forth in the course syllabus or other advertisements by Defendant." *Id.* ¶ 41. Thereafter, Defendant issued Plaintiff a grade of "F" for "not attending" and "not capitulating to the fraudulent misrepresentation of the human performance technology course." *Id.* ¶ 43. Plaintiff subsequently contacted the consumer protection division of the Office of the Attorney General of Virginia to file a complaint to "[r]ecover the loss of tuition and cost of attendance from the Principles of Human Performance Technology course" and "[h]ave the 'F' removed from his transcript." *Id.* ¶ 45.

Another university's graduate program accepted Plaintiff into its program in February 2022, but in March 2022 Plaintiff learned the other program rescinded his acceptance because of the 'F' on the transcript that Defendant submitted for Plaintiff. *Id.* ¶¶ 48–49.

In May 2022, Plaintiff, proceeding *pro se*, filed a complaint against Defendant in this Court, raising nine state and federal claims against Liberty. Defendant subsequently filed a motion to dismiss the complaint. Dkt. 9. The motion has been fully briefed, Dkts. 10, 15, and the motion is ripe for decision.[1]

Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King*, 825 F.3d at 212. A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or

[1] The Court dispenses with oral argument, considering the issues requiring resolution and the parties' positions fully developed in their written memoranda.

arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted). This is not to say that Rule 12(b)(6) requires "heightened fact pleading of specifics." *Twombly*, 550 U.S. at 570. Instead, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* Still, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As Plaintiff is proceeding *pro se*, the Court will afford his complaint a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1970).

<u>Count I (Fair Credit Reporting Act)</u>

Plaintiff alleges that "Defendant has failed to follow any reasonable procedures to assure the maximum possible accuracy of the information in Plaintiff's account that is reported to The U.S. Department of Education and/or their loan servicer, Aidvantage, as required by section 607(b) [of the FCRA, 16 U.S.C. § 1681e(b)]." Compl. p. 10 (¶ 2). For the reasons below, the Court concludes Plaintiff has failed to state an FCRA claim.

The FCRA primarily regulates "consumer reporting agencies," which it defines to include any person or entity that assembles or evaluates consumer credit information "for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681(b); *id.* § 1681a(f). Plaintiff does not allege that Defendant is a consumer reporter agency based on this definition. Affording Plaintiff's Complaint a liberal construction on account of his *pro se* status, the Court assumes Plaintiff's FCRA claim is premised on Defendant's alleged duties as a "furnisher of information" to consumer reporting agencies. *Id.* § 1681s–2.

The FCRA puts forward two basic requirements for furnishers of information. First, the statute prohibits any person or entity from knowingly furnishing inaccurate information to a

"consumer reporting agency." *Id.* § 1681s–2(a). Plaintiff cannot pursue relief under this requirement, as it includes no private right of action. *Id.* § 1681s–2(c), (d); *Lovegrove v. Ocwen Home Loans Servicing, L.L.C.*, 666 F. App'x 308, 313 (4th Cir. 2016) (unpublished). Thus, Plaintiff cannot advance an FCRA claim against Defendant based solely on allegations that Defendant provided inaccurate information to a credit reporting agency. Plaintiff has failed to allege facts that could support a viable FCRA claim against Defendant. Plaintiff cites 15 U.S.C. § 1681e(b), which governs consumer reporting agencies, Compl. p. 10 (¶ 2), but Plaintiff never alleges that Defendant is such an agency. It follows that Plaintiff fails to allege a claim under this provision of the FCRA.

Second, a furnisher has duties to respond if a consumer disputes the accuracy of the information furnished to a consumer reporting agency. 15 U.S.C. § 1681s–2(b). There is only a private right of action for a violation of § 1681s–2(b) if a "creditor who has been notified by a [consumer reporting agency] that a consumer has disputed information furnished by that creditor" investigates the dispute, "'report[s] the results of the investigation to the consumer reporting agency' and, if any information was inaccurate, reports the results of the investigations to the other [consumer reporting agencies]." *Lovegrove*, 666 F. App'x at 313 (quoting *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 429–30 (4th Cir. 2004) (quoting 15 U.S.C. § 1681s–2(b))). Under this process, the consumer must notify the consumer reporting agency of the disputed information, and the consumer reporting agency then must notify the furnisher of the information regarding that dispute. 15 U.S.C. § 1681s–2(b).

Plaintiff cites 15 U.S.C. § 1681s–2(b), *id.* p. 11 (¶ 3). However, Plaintiff never alleges that Defendant furnished inaccurate information to any consumer reporting agency. Section 1681s–2(b) only authorizes a private right of action against a furnisher of information when the

furnisher receives notice of a dispute from a consumer reporting agency and fails to properly investigate that report. 15 U.S.C. § 1681s–2(b); *Johnson*, 357 F.3d at 429–30. Plaintiff alleges that he contacted Aidvantage concerning the amount of the federal student loan in dispute to assess the status of the debt, and, at the time the Complaint was filed, "there ha[d] been no official response from Defendant concerning the validity of Plaintiff's claim." Compl. ¶¶ 15–16. Further, Plaintiff alleges that "[t]he Aidvantage representative informed Plaintiff that due to the backlog of borrower defense applications, it could take years for him to obtain a decision concerning the amount of the student loan he is disputing to be approved," and "in the meanwhile, the amount Plaintiff is disputing will continue to be reported to credit reporting agencies as a legitimate debt owed by Plaintiff." *Id.* ¶ 19. But the Complaint nowhere alleges that Defendant received a report from a credit reporting agency, much less that Defendant failed to properly investigate such a report. Thus, Plaintiff has failed to allege a claim under § 1681s–2(b). Plaintiff's claim under the FCRA is dismissed for failure to state a claim.

Counts II–III (Fraudulent Misrepresentation and Violation of the Virginia Consumer Protection Act)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1297 (2d ed. 1990)); *see also Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014) (internal reference

omitted); *Leitner v. Liberty Univ., Inc.*, No. 6:19-cv-00029, 2020 WL 7128972, at *6 (W.D. Va. Dec. 4, 2020) (internal reference omitted). However, the complaint may rely on general allegations of a defendant's knowledge and intent. Fed. R. Civ. P. 9(b); *see also Reynolds v. Wells Fargo Home Mortg.*, No. 7:19-cv-00799, 2020 WL 3977934, at *7 (W.D. Va. July 14, 2020). Plaintiff's Complaint fails to meet the high bar for pleading fraud or mistake.

To allege fraudulent misrepresentation under Virginia law, a party must show "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Branin v. TMC Enterps., LLC*, 832 F. Supp. 2d 646, 652 (W.D. Va. 2011) (citing *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005))

Plaintiff fails to allege facts supporting that Defendant committed fraudulent misrepresentation. Plaintiff alleges that "[t]he criteria indicated by The United States Department of Education for misrepresenting educational services encompasses a college or university failing to tell students important information about the availability of educational opportunities or support services provided by the school." Compl. p. 12 (¶ 10). Plaintiff alleges that "Defendant willfully and wantonly, a) Misrepresented the qualifications of its faculty, b.) Misrepresented how the human performance technology course would be taught, and, b.) [sic] Misrepresented how often required courses would be available or when those courses would be scheduled." *Id.* at p. 10 (¶ 11). Nowhere in the Complaint does Plaintiff identify particular statements that constitute the basis for Plaintiff's fraud claims. Without identifying "'the who, what, when, where, and how of the alleged fraud,'" as required under Rule 9(b), Plaintiff fails to allege facts sufficient to support his fraudulent misrepresentation claim (Count II).

In Count III of the Complaint, Plaintiff alleges that Defendant violated the Virginia Consumer Protection Act ("VCPA"). The VCPA, as Plaintiff alleges, declares unlawful certain "fraudulent acts or transactions by a supplier in connection with a consumer transaction," Virginia Code § 59.1-200(A), including prohibition of

> [a]dvertising services with the intent not to sell them as advertised; [m]isrepresenting the characteristics and benefits of services; [u]sing deception, false pretense, and misrepresentation in connection with a consumer transaction; and advertising services with the intent not to sell them as advertised; and [m]aking misleading statements of fact concerning reasons for or existence of a price reduction.

Compl. p. 14 (¶ 5) (reformatted). The Fourth Circuit has recognized VCPA claims as "governed by the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure," as a plaintiff must allege a fraudulent act to state a VCPA claim. *Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 2020 (4th Cir. 2015) (unpublished) (per curiam); *see also Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 657 (4th Cir. 2014); *Hamilton v. Boddie-Noell Enters., Inc.*, 88 F. Supp. 3d 588, 591 (W.D. Va. 2015). Thus, for the reasons discussed above related to Rule 9(b)'s pleading standard, Count III also must be dismissed for failure to state a claim, pursuant to Rule 12(b)(6). *See Leitner*, 2020 WL 7128972, at *6.

Counts IV-V (Negligent Misrepresentation and Constructive Fraud)

Constructive fraud, "also referred to as negligent misrepresentation," "requires the same showing as a claim for actual fraud, except 'the plaintiff is only required to plead that the false representation was made innocently or negligently.'" *Derrick v. Lincoln Nat'l Life Ins. Co.,* No. 6:18-cv-00085, 2020 WL 4352758, at *3 (W.D. Va. July 29, 2020) (quoting *Sales v. Kecoughtan Hous. Co.*, 690 S.E.2d 91, 94 (Va. 2010)). Further, "under Virginia law, the claim must also arise from a breach of a common law or statutory duty, rather than one arising from the virtue of a

contractual relationship between the parties." *Id.* (citing *Abi-Najm v. Concord Condo., LLC*, 699 S.E.2d 483, 489 (Va. 2010); *Dunn Constr. Co. v. Cloney*, 682 S.E.2d 943, 946 (Va. 2009)). "The existence of a general tort duty, owed by everyone to everyone, to refrain from constructive fraud has been implicitly repudiated by the Virginia Supreme Court, which has, on numerous occasions, rejected constructive fraud claims on the basis that a common law duty did not exist between the contracting parties." *Id.* at *5 (internal reference omitted).

Plaintiff fails to allege facts supporting his negligent misrepresentation (Count IV) and constructive fraud (Count V) claims. Plaintiff alleges that

> Defendant made negligent and material misrepresentations consisting of untrue representations and failures of disclosure which Defendant intended Plaintiff to rely on and upon regarding his academic performance by submitting an official transcript to the University of Louisiana of Monroe with a grade of 'F' for the fraudulently misrepresented Principles of Human Performance Technology course.

Compl. p. 15 (¶ 2). Nowhere in Plaintiff's Complaint does he allege the contents of the false misrepresentation or what the entity making a misrepresentation obtained thereby. *Harrison*, 176 F.3d at 784. Instead, Plaintiff conclusorily states that Defendant made negligent and material misrepresentations.

Thus, Counts IV and V should be dismissed pursuant to Rule 12(b)(6).

<u>Count VI (Breach of Contract)</u>

Plaintiff alleges having "entered into a contract with Defendant, which provided that Plaintiff acquired a federal student loan to pay fees to Defendant," and "in exchange for fees, Defendant would provide educational services as advertised on Defendant's website and outlined in Plaintiff's course syllabi. Plaintiff fulfilled his financial obligation by paying all of the fees due to Defendant for the spring 2021 semester." Compl. p. 17 (¶ 4). Plaintiff alleges that, "even

if not a breach of the express terms of Defendant's contract with Plaintiff, Defendant's conduct breached the covenant of good faith and fair dealing implied by the laws of Virginia governing contracts." *Id.* p. 18 (¶ 11).

To assert a breach-of-contract claim under Virginia law, a Plaintiff must allege the following: (1) a legally enforceable obligation owed by Defendant to Plaintiff; (2) Defendant's violation of that obligation; and (3) damage to the Plaintiff as a result of the breach. *Riley v. Barringer*, 337 F. Supp. 3d 647, 654 (W.D. Va. 2018) (citing *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006)).

The Eastern District of Virginia has previously recognized that a plaintiff failed to state a claim for breach of contract based on a defendant university's "change of syllabi midway through the semester, because the Complaint fail[ed] to contain plausible factual allegations that a legally enforceable obligation . . . existed." *Brown v. Clements*, No. 3:15-cv-104, 2015 WL 5677296, at *10 (E.D. Va. Sept. 23, 2015). That court explained that "no facts alleged plausibly suggest the mutual assent . . . to the existence of one fixed syllabus throughout the semester." *Id.* (citing *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 337 (E.D. Va. 2005) (describing a university catalog as an "unenforceable illusory contract" because it lacked mutuality of engagement)).

Here, similarly, Plaintiff has not alleged facts supporting a legally enforceable obligation between Plaintiff and Defendant. Though Plaintiff alleges that "in exchange for fees, Defendant would provide educational services as advertised on Defendant's website and outlined in Defendant's course syllabi," Compl. p. 17 (¶ 4), no alleged facts support the existence of a legally enforceable obligation. This Court, and other courts in this district and elsewhere, have held that University handbooks and catalogs, like the sort that house syllabi, do not establish

contractual obligations under Virginia law. *See, e.g.*, *Owen v. Liberty Univ.*, No. 6:19-cv-00007, 2020 WL 1856798, at *7 (W.D. Va. Apr. 13, 2020) (citing related cases). The Complaint in this case alleges no language in any handbook, syllabus or catalog that would support any contrary conclusion that they would give rise to any contractual obligations. Thus, Plaintiff's claim for breach of contract must be dismissed.

Count VII (Unjust Enrichment)

Plaintiff alleges that "Defendant has been unjustly enriched by retaining the fees paid by Plaintiff for the Principles of Human Performance Technology in addition to other costs of attendance while not providing appropriate services for which those fees were paid." Compl. p. 20 (¶ 5). Plaintiff has not alleged facts that support this claim.

To state a claim for unjust enrichment under Virginia law, Plaintiff must allege the following: (1) Plaintiff conferred a benefit on Defendant; (2) Defendant knew of the benefit and should reasonably have expected to provide services in return; and (3) Defendant accepted or retained the benefit without providing value or services in return. *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 838 (Va. 2008).

Plaintiff has alleged facts indicating that he received services from Defendant in exchange for the benefit of his tuition payment. Plaintiff enrolled in the course for which he registered, therein conferring a benefit on Defendant through paying for the course. Compl. ¶¶ 22–26. Defendant granted Plaintiff's request to be reassigned to a new course section when he did not like how the course section in which he was initially enrolled was taught. *Id.* ¶¶ 22–27. Further, Defendant offered to revise the course to a one-on-one setting for Plaintiff. *Id.* ¶ 31. Plaintiff ultimately refused to complete the course. *Id.* ¶ 40. This Court has previously dismissed

a student's unjust enrichment claims based on Liberty University retaining tuition payments after the student complained of Liberty's instructional methods. *Nails v. Liberty Univ.*, No. 6:20-cv-00063, 2022 WL 1164808, at *2, n.2 (W.D. Va. Feb. 17, 2022), *reconsideration denied*, No. 6:20-cv-00063, 2022 WL 1164814 (W.D. Va. Apr. 7, 2022). The Court noted that the plaintiff in that case "ha[d] not alleged non-conclusory facts that, taken as true, would show any benefit she conferred on Liberty or Liberty's retention of that benefit under circumstances that would make it inequitable for Liberty to retain such benefit." *Id.* (internal citation omitted). The same is true here, and Plaintiff's unjust enrichment claim thus must be dismissed.

Count VIII (Breach of Fiduciary Duty)

Next, Plaintiff alleges that "Defendant owed Plaintiff the fiduciary duty of providing educational services tantamount to acceptable standards of similarly situated higher education settings," and "Defendant breached that duty by seeking to undermine acceptable standards of implementing a course at the doctoral level." Compl. p. 20 (¶¶ 3–4).

To state a breach of fiduciary duty claim under Virginia law, a plaintiff must allege the following: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damages proximately caused by said breach. *See, e.g.*, *Jordan v. Osmun*, No. 1:16-cv-501, 2017 WL 2837143, at *4 (E.D. Va. June 29, 2017). This Court has previously recognized that, for a breach of fiduciary duty claim to survive a motion to dismiss, the complaint must allege facts establishing the fiduciary duty and acts by a defendant that breached one of the established duties. *Cobb v. The Rector and Visitors of Univ. of Va.*, 69 F. Supp. 2d 815, 825 (W.D. Va. 1999). Plaintiff alleges no such facts in his Complaint. It is not enough to allege that a university, "in accepting [a student's] application for admission and tuition payments, owed [the student] a

duty of good faith, fair dealing, and honesty and subsequently breached those duties." *Id.*; *see also August Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 295 (Va. 2007) (recognizing that a plaintiff failed to raise a valid breach of fiduciary duty claim since "[a]ny fiduciary duty allegedly breached in this case existed solely because of [a] contractual relationship."). Thus, following the same reasoning in the case at issue, the Court must dismiss Count VIII of Plaintiff's Complaint.

Count IX (Conversion)

Plaintiff alleges that "Defendant's retention of the fees paid by Plaintiff without providing appropriate services for which Defendant received payment deprived Plaintiff of the benefits and value for which occurred financial debit [sic] from another federal student loan," and "[t]he interferences of the deprivation of appropriate educational services for which Plaintiff acquired a federal student loan to pay Defendant damaged Plaintiff with the acquisition of more debt without the appropriate college credit for which he paid Defendant fees." Compl. pp. 21–22 (¶¶ 7–8). Plaintiff thus claims "entitle[ment] to the return of his tuition and cost of attendance. *Id.* p. 22 (¶ 9).

Under Virginia law, "[a]n action for conversion can be maintained only by one who has a property interest in and is entitled to the immediate possession of the thing alleged to have been wrongfully converted." *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902, 906 (Va. 1994) (internal citation omitted). A conversion claim

> 'typically applies only to tangible property,' [though] Virginia law does recognize a claim for conversion of 'intangible property rights that arise from or are merged with a document, such as a valid stock certificate, promissory note, or bond'—but to establish such claim, the plaintiff 'must have both a property interest in and be entitled to immediate possession of the documented intangible property.'

*Student A v. Liberty Univ.*, No. 6:20-cv-00023, 2022 WL 1423617, at *8 (W.D. Va. May 5, 2022) (quoting *Mackey v. McDannald*, 842 S.E.2d 379, 387 (2020) (citation omitted, cleaned up)). Further, "money can only be the subject of a conversion claim in limited circumstances, including when it is part of a segregated or identifiable fund." *Id.* (quoting *Northstar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1020 (E.D. Va. 2018) (internal quotation marks and citation omitted)).

This Court recently dismissed a conversion claim involving fees that Liberty University students paid during the spring semester of 2020, a time in which on-campus activities that their fees would have supported were disrupted by the COVID-19 pandemic. *Student A*, 2022 WL 1423617, at *8–9; *see also id.* at *9, 9 n.8 (citing non-Virginia precedent addressing similar claims against higher education institutions "for failure to return some portion of tuition or on-campus related fees on account of the COVID-19 pandemic"). The Court reached such a conclusion because, in addition to the plaintiffs' conversion claims not relating to Liberty University's authority over any of plaintiffs' tangible goods, the fees at issue did not belong to a segregated or identifiable fund. *Id.* at *9.

Following the same reasoning, Plaintiff's conversion claim must be dismissed for failure to state a claim. Plaintiff has alleged no facts indicating that Liberty wrongfully assumed control of any of his tangible property, nor has he alleged that the tuition he paid Liberty was meant to be kept as a separate, segregated fund.

## Conclusion

Plaintiff has failed to state any plausible claim to relief, so the case is dismissed.

It is so ORDERED.

The Clerk of Court is directed to send this Memorandum Opinion to all parties in the case.

Entered this 6th day of September, 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE